UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMP AUTOMOTIVE, LLC | CIVIL ACTION |
| VERSUS | NO. 17-5667 |
| B F T, LP d/b/a GREAT AMERICAN BUSINESS PRODUCTS | SECTION A(5) |

**ORDER AND REASONS**

Before the Court is a **Motion to Dismiss and/or Motion to Strike (Rec. Doc. 16)** filed by Defendant B F T, LP d/b/a GREAT AMERICAN BUSINESS PRODUCTS ("Great American"). Plaintiff AMP Automotive, LLC ("AMP") opposes this motion (Rec. Doc. 17) and Defendant has replied. (Rec. Doc. 20). The motion, set for submission on October 4, 2017, is before the Court on the briefs without oral argument. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that the Defendant's motion should be **DENIED** for the reasons set forth below.

**I.    Background**

Plaintiff AMP alleges that Defendant Great American violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited faxes advertising Great American products and services. (Rec. Doc. 1). In 1991, Congress passed the Telephone Consumer Protection Act. *See* Pub. L. No. 102–243, 105 Stat. 2394 (codified as amended at 47 U.S.C. § 227). Thereafter, in 2005, Congress passed the Junk Fax Prevention Act, which amended the 1991 TCPA. *See* Pub. L. No. 109–21, 119 Stat. 359 (codified at 47 U.S.C. § 227). For simplicity, the Court will refer to the combined and amended legislation as "the Act." *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 852 F.3d 1078, 1080 (D.C. Cir. 2017).

The Act makes it unlawful to use a fax machine to send an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). It also provides a private right of action, which permits any "person or entity" to bring an action seeking (1) to enjoin a violation of the Act, (2) to recover for actual monetary loss from such a violation or to receive statutory damages of $500 per violation, whichever is greater, or (3) to pursue both injunctive and monetary relief. 47 U.S.C. § 227(b)(3).

AMP categorizes Great American's actions as a "Junk Fax Campaign." (Rec. Doc. 1, p. 4). AMP alleges that Great American "blasted thousands of junk faxes" in direct violation of the Act and the regulations promulgated under the Act by the Federal Communications Commission ("FCC"). (Rec. Doc. 1, p. 4, ¶ 11). AMP specifically provides fifteen allegedly unsolicited faxes that were sent as advertisements from Great American to AMP. (Rec. Doc. 1-1, Exhibits 1–15). Attached to AMP's Complaint are the fifteen single-page advertisements, which all have the following language located towards the bottom of the page:

> To order, call us at 1-800-231-0329 or visit www.gabpauto.com
> If you'd prefer not to receive future fax offers, check the box below and fax this to 1-800-423-6808.

*Id.* Further down the page on each advertisement is a blank check-box followed the additional language providing:

> We hope you enjoyed receiving this reminder. However, if you'd rather not receive future faxes from Great American please check here. Please note: It may take up to 5 business days to be removed. Our apologies if you receive additional faxes during this time.

*Id.* AMP further alleges that Great American sent junk faxes without complying with opt-out notice requirements in violation of the Act and the FCC's regulations promulgated thereunder. (Rec. Doc. 1, p. 4, ¶ 11). Moreover, AMP argues that Great American is precluded from raising an "established business relationship" defense because the opt-out language provided at the bottom

of the advertisements is not compliant with FCC regulations. Therefore, the "established business relationship" defense would not apply to Great American. *Id.* at ¶ 13.

AMP also seeks to bring this suit as a class action. Moreover, AMP seeks to be named representative of the Plaintiff Class and seeks an incentive award for its efforts as class representative. *Id.* AMP also seeks statutory damages of $500 for each violation of the Act, trebling of damages if the Court finds fit, and injunctive relief prohibiting Great American from continuing to send allegedly non-compliant fax advertisements. *Id.* at 11–12; *see also* 47 U.S.C. § 227(b)(3).

Great American brings this motion pursuant to Fed. R. Civ. P. 12(b)(6) on the ground that AMP has failed to state a claim upon which relief can be granted. (Rec. Doc. 16). Great American also brings a motion to strike AMP's proposed class pursuant to Fed. R. Civ. P. 12(f) on the ground that AMP's class definition is inherently flawed. *Id.*

## II.  Law and Analysis

Defendant's 12(b)(6) motion seeks to dismiss Plaintiff's claims on the following grounds: (1) dismissal is proper because Defendant did not send unsolicited faxes as alleged by Plaintiff; (2) an "established business relationship" existed between Plaintiff and Defendant, which provides a defense against Plaintiff's claims; and (3) the FCC's regulations concerning opt-out notice requirements have been held invalid and inapplicable to solicited faxes. (Rec. Doc. 16-1).

Defendant's 12(f) motion seeks to strike Plaintiff's proposed class definition on the following grounds: (1) Plaintiff's class cannot be ascertained; (2) Plaintiff cannot lead a class of which he is not a member; and (3) Plaintiff's proposed class is an impermissible "fail-safe" class. *Id.*  The Court will first address Defendant's Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) followed by Defendant's Motion to Strike pursuant to Fed. R. Civ. P. 12(f).

### A. Defendant's Motion to Dismiss

The Federal Rules of Civil Procedure permit a defendant to seek dismissal of a complaint based on the "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A district court must construe the facts in the light most favorable to the nonmoving party. *See Lormand v. U.S. Unwired, Inc.* 565 F.3d 228, 232–33 (5th Cir. 2009). The court must accept as true all factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). Dismissal is appropriate only if the complaint fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A motion to dismiss under rule 12(b)(6) is "viewed with disfavor and is rarely granted." *Kaiser Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982).

Defendant's first argument is that Plaintiff and Defendant had an "established business relationship." (Rec. Doc. 16-1). The Act exempts from liability "unsolicited advertisements" sent to recipients with whom the sender has an "established business relationship." 47 U.S.C. § 227(b)(1)(C)(i). Specifically, the "established business relationship" exception permits unsolicited fax advertisements where (1) the unsolicited advertisement is from a sender with an established business relationship with the recipient; (2) the sender obtained the recipient's fax number through "voluntary communication" with the recipient or "the recipient voluntarily agreed to make" his information available in "a directory, advertisement, or site on the Internet;" and (3) the unsolicited advertisement "contains a notice meeting the requirements under paragraph

(2)(D)." 27 U.S.C. § 227(b)(1)(C)(i)-(iii). Paragraph (2)(D) provides, among other things, that the notice must be "clear and conspicuous" and "on the first page of the unsolicited advertisement." Also, the notice must state that the recipient may opt out from "future unsolicited advertisements," and must include a "cost-free mechanism" to send an opt-out request "to the sender of the unsolicited advertisement." 47 U.S.C. § 227(b)(2)(D); *Bais*, 852 F.3d at 108. The FCC has defined "established business relationship" as:

> [A] prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber with or without an exchange of consideration, on the basis of an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity, which relationship has not been previously terminated by either party.

47 C.F.R. § 64.1200(f)(5); 47 U.S.C. § 227(a)(2). The Act defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5).

Defendant argues that it is undisputed that Plaintiff and Defendant have or had an "established business relationship," and therefore, dismissal is proper. Paragraph 13 of Plaintiff's Complaint states, "By failing to include a compliant opt-out notice, Defendant is precluded from raising an established business relationship defense in any litigation arising from these faxed advertisements." (Rec. Doc. 1, p. 4, ¶ 13). Defendants would have the Court believe that this statement in Plaintiff's Complaint constitutes an acknowledgement by Plaintiff of an "established business relationship" with Defendant. The Court does not agree. At this stage in the proceedings, the Court must view the facts in a light most favorable to the non-moving party—in this instance, the Plaintiff.

In Plaintiff's opposition to this motion, Plaintiff alleges that it has never contacted Defendant "for any purposes, much less for business reasons." (Rec. Doc. 17, p. 3). Moreover, Plaintiff alleges that "[a]t no point since [Plaintiff's] inception did [Plaintiff] do business with, voluntarily communicate with, or in any way ask to receive correspondence of any type from [Defendant]." *Id.* at p. 4. Defendant then categorizes its relationship with Plaintiff as a misunderstanding. In reply to Plaintiff's opposition, Defendant argues that beginning in February of 1996, Defendant established a business relationship with Marshall Brothers Lincoln ("Marshall Brothers"). This relationship allegedly involved Defendant processing over 108 orders for Marshall over nearly twenty years. (Rec. Doc. 20, p. 1). Marshall Brothers then placed its last order with Defendant on August 13, 2014. *Id.* However, Defendant continued to regularly send fax advertisements to Marshall Brothers. It was not until after the filing of this suit that Defendant learned that Marshall Brothers ceased operations sometime in 2014.

Additionally, Defendant allegedly did not know that Marshall Brothers formed AMP Automotive, LLC in February of 2017. AMP now utilizes the Marshall Brothers Collision Center as a trade name and operates from the same address Marshall Brothers operated during its 18 year relationship with Defendant. Finally, Defendant points out that it was not until after this lawsuit was filed when Defendant learned that Marshall Brothers Collision Center (the trade name of Plaintiff herein) utilized the fax number Marshall Brothers had used during its 18 year relationship with Defendant.

While the Court recognizes Defendant's alleged misunderstanding, dismissing this matter at this stage in the proceedings would be improper. Whether there was or was not an "established business relationship" between Plaintiff and Defendant at the time of each allegedly unsolicited fax is a fact-intensive inquiry not suitable for this 12(b)(6) motion. Plaintiff alleges that "[a]t no

point since AMP's inception did AMP do business with, voluntarily communicate with, or in any way ask to receive correspondence of any type from [Defendant]." (Rec. Doc. 17, p. 4). The relationship between Plaintiff and Defendant is certainly contested and the facts put forth by Defendant show an understandable confusion regarding the intended recipient of the faxes. However, at this stage in the proceedings the Court must view the facts in a light most favorable to the Plaintiff. The Court finds that Plaintiff's Complaint does not concede that there was an "established business relationship" between Plaintiff and Defendant. Therefore, at this time, the Court does not find Defendant falls under the exception provided by 47 U.S.C. § 227(b)(1)(C).

Defendant's second argument in support of this 12(b)(6) motion relies on the recent D.C. Circuit Court decision, *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 852 F.3d 1078 (D.C. Cir. 2017). That decision held unlawful a rule promulgated by the FCC requiring *solicited* faxes to include opt-out notices. Defendant argues that based on this decision there is no requirement under the Act that the opt-out notice in Defendant's faxes must meet FCC regulations. However, this argument puts the horse before the cart. Defendant's argument makes the assumption that the faxes in question were solicited by Plaintiff. (Rec. Doc. 16-1, p. 8) (stating, "[T]he opt-out notice provisions in the [Act] applied to solicited faxes, where the recipient, *like Plaintiff herein*, gave the sender permission to send facsimile advertisements.") (emphasis added); *see also* (Rec. Doc. 16-1, p. 9) (stating, "Because the faxes sent to Plaintiff were solicited. . . ."). However, Defendant does not cite any statement in Plaintiff's Complaint that concedes the faxed advertisements were solicited.

The FCC has defined "unsolicited advertisements" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person *without that person's prior express invitation or permission, in writing or otherwise*." 47

7

U.S.C. § 227(a)(5) (emphasis added). Thus, "solicited advertisements" are those faxes that are sent with the prior express invitation or permission of the recipient. *Bais*, 852 F.3d at 1082. The Court cannot assume that Defendant's faxes were sent to Plaintiff with Plaintiff's prior express invitation or permission. Therefore, Defendant's second argument fails.

For the reasons stated above, Defendant's 12(b)(6) motion to dismiss is denied.

### B. Defendant's Motion to Strike

Next, Defendant asks the Court to strike Plaintiff's class allegations under Fed. R. Civ. P. 12(f). Plaintiff defines the putative class as follows:

> [A]ll persons and entities that are subscribers of telephone numbers to which within four years of the filing of this Complaint, Defendant sent unsolicited facsimile transmissions with content that discusses, describes, promotes products and/or services offered by Defendant, and does not contain the opt-out notice required by 47 U.S.C. § 227(b)(2)(D) and by 47 C.F.R. § 64.1200(a)(4)(iii).

(Rec. Doc. 1, p. 5, ¶ 16). Defendants challenge Plaintiff's class definition on several grounds.

First, Defendant argues that Plaintiff's class cannot be ascertained. To maintain a class action, the proposed class must be adequately defined and clearly ascertainable by reference to objective criteria. *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (quoting *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970)). The class definition must be sufficiently definite in that it is administratively feasible for the court to determine whether a particular individual is a member. *Sartin v. EKF Diagnostics, Inc.*, 2016 WL 7450471 (E.D. La. Dec. 28, 2016) (quoting Wright & Miller, 7A *Federal Practice and Procedure*, § 1760 (2d ed.)). Nonetheless, "the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceedings." *Frey v. First Nat. Bank Sw.*, 602 Fed. App'x. 164, 168 (5th Cir. 2015). Thus, "if the general outlines of the membership of the class are determinable at the outset of the litigation,

a class will be deemed to exist." *Sartin*, 2016 WL at *6 (quoting Wright & Miller, 7A *Federal Practice and Procedure*, § 1760 (2d ed.)).

Defendant argues that a class defined as those subscribers of phone numbers who Defendant sent fax transmissions to is administratively unfeasible. (Rec. Doc. 16-1, p. 13). However, the Court is convinced by Plaintiff's argument in response, which refers to Judge Vance's decision in *Sartin v. EKF Diagnostics, Inc.* 2016 WL 7450471 (E.D. La. 2016). In *Sartin*, the defendant argued that the plaintiff's proposed class definition would create insurmountable administrative problems. *Id.* at *7. Judge Vance, following numerous cases holding the same, held that any administrative concerns that defendants have early in litigation can be addressed in future case management orders and do not warrant striking a defendant's class allegations. This Court holds the same.

The class definition in *Sartin* and the class definition here are nearly identical. One notable distinction is that the class definition in *Sartin* included, "[A]ll persons and entities, who . . . received facsimile transmissions." *Id.* at *5. Plaintiff's class definition in this case includes, "[A]ll persons and entities that are subscribers of telephone numbers to which . . . Defendant sent unsolicited facsimile transmissions." (Rec. Doc. 1, p. 5, ¶ 16). The Court finds that Plaintiff's class definition is not necessarily administratively unfeasible at this stage in the proceedings.

Moreover, in *Fairway Medical Center LLC v. McGowan Enterprises, Inc.*, Judge Fallon addressed the same issue regarding a defendant's motion to strike plaintiff's class definition. 2017 WL 1423883 (E.D. La. 2017). In *Fairway Medical*, Judge Fallon found that the defendant's motion to strike the plaintiff's class definition was premature. *Id.* at *4. Specifically, Judge Fallon found that the issues of whether the faxes sent by the defendant were solicited and whether the faxes complied with the Act and FCC regulations were issues of merit, not of improper pleading.

Therefore, the court denied defendant's arguments as premature. This Court agrees with the cases outlined above. Plaintiff's class definition is not necessarily administratively unfeasible. Defendant's remaining arguments contending Plaintiff is not part of the proposed class and that the class is an impermissible "fail-safe" class are better suited as merit issues, not of improper pleading.

For the reasons stated above, Defendant's Fed. R. Civ. P. 12(f) motion to strike is denied.

Accordingly;

IT IS ORDERED that Defendant's Fed. R. Civ. P. 12(b)(6) **Motion to Dismiss (Rec. Doc. 16)** is **DENIED**;

IT IS FURTHER ORDERED that Defendant's Fed. R. Civ. P. 12(f) **Motion to Strike (Rec. Doc. 16)** is **DENIED**.

New Orleans, Louisiana, this 13th day of November, 2017.

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE