UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMP AUTOMOTIVE, LLC | CIVIL ACTION |
| VERSUS | NO. 17-5667 |
| B F T, LP d/b/a GREAT AMERICAN BUSINESS PRODUCTS | SECTION A(5) |

**ORDER AND REASONS**

Before the Court is **Plaintiff's Motion for Class Certification (Rec. Doc. 70)** filed by Plaintiff AMP Automotive, LLC ("AMP"). Defendant B F T, LP d/b/a GREAT AMERICAN BUSINESS PRODUCTS ("Great American") opposes the motion (Rec. Doc. 80) and Plaintiff has replied. (Rec. Doc. 85). The motion, set for submission on July 11, 2018, is before the Court on the briefs without oral argument. A jury trial is set to commence on December 3, 2018. Having considered the motion and memoranda of counsel, the record, and the applicable law, the Court finds that **Plaintiff's Motion for Class Certification (Rec. Doc. 70)** is **DENIED** for the reasons set forth below.

**I.     Background**

Plaintiff AMP alleges that Defendant Great American violated the Telephone Consumer Protection Act ("TCPA") by sending unsolicited faxes advertising Great American products and services. (Rec. Doc. 1). In 1991, Congress passed the Telephone Consumer Protection Act ("TCPA"). *See* Pub. L. No. 102–243, 105 Stat. 2394 (codified as amended at 47 U.S.C. § 227). Thereafter, in 2005, Congress passed the Junk Fax Prevention Act ("JFPA"), which amended the 1991 TCPA. *See* Pub. L. No. 109–21, 119 Stat. 359 (codified at 47 U.S.C. § 227). For simplicity,

the Court will refer to the combined and amended legislation as "the Act." *Bais Yaakov of Spring Valley v. Federal Communications Commission*, 852 F.3d 1078, 1080 (D.C. Cir. 2017).

The Act makes it unlawful to use a fax machine to send an unsolicited advertisement. 47 U.S.C. § 227(b)(1)(C). It also provides a private right of action, which permits any "person or entity" to bring an action seeking (1) to enjoin a violation of the Act, (2) to recover for actual monetary loss from such a violation or to receive statutory damages of $500 per violation, whichever is greater, or (3) to pursue both injunctive and monetary relief. 47 U.S.C. § 227(b)(3).

AMP categorizes Great American's actions as a "Junk Fax Campaign." (Rec. Doc. 1, p. 4). AMP alleges that Great American "blasted thousands of junk faxes" in direct violation of the Act and the regulations promulgated under the Act by the Federal Communications Commission ("FCC"). (Rec. Doc. 1, p. 4). AMP specifically provides the fifteen allegedly unsolicited faxes that were sent as advertisements from Great American to AMP. (Rec. Doc. 1-1, Exhibits 1–15). Attached to AMP's Complaint are the fifteen single-page advertisements, which all have the following language located towards the bottom of the page:

> To order, call us at 1-800-231-0329 or visit www.gabpauto.com
> If you'd prefer not to receive future fax offers, check the box below and fax this to 1-800-423-6808.

*Id.* Further down the page on each advertisement is a blank check-box followed by additional language providing:

> We hope you enjoyed receiving this reminder. However, if you'd rather not receive future faxes from Great American please check here. Please note: It may take up to 5 business days to be removed. Our apologies if you receive additional faxes during this time.

*Id.*

AMP also seeks to bring this suit as a class action. Moreover, AMP seeks to be named representative of the Plaintiff Class and seeks an incentive award for its efforts as class

2

representative. *Id.* AMP also seeks statutory damages of $500 for each violation of the Act, trebling of damages if the Court finds fit, and injunctive relief prohibiting Great American from continuing to send allegedly non-compliant fax advertisements. *Id.* at 11–12; *see also* 47 U.S.C. § 227(b)(3). The present motion concerns AMP's intention to have this suit certified as a class action.

## II. Law

Class actions permit representative plaintiffs to litigate their claims on behalf of members of the class not before the court. The purpose of a class action is to avoid multiple actions and to allow claimants who could not otherwise litigate their claims individually to bring them as a class. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983). A district court has great discretion in certifying and managing a class action. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). The party seeking class certification bears the burden of proving all the requirements set out in Rule 23 of the Federal Rules of Civil Procedure.

Here, Plaintiff seeks class certification under Rule 23(b)(3). (Rec. Doc. 70). A class may be certified under Rule 23(b)(3) if it meets the four prerequisites found in Rule 23(a) and one of the additional requirements found in Rule 23(b)(3). The four prerequisites for certifying a class include: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). *Mullen*, 186 F.3d at 623 (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 613 (1997)).

Rule 23(b)(3) provides that the action may be maintained if the prerequisites of (a) are satisfied and the issues of law or fact common to the members predominate over any questions

affecting individual members.[1] This is the predominance requirement and is more stringent than the commonality requirement. *O'Sullivan v. Countrywide Home Loans*, 319 F.3d 732, 738 (5th Cir. 2003). To make the predominance consideration, the court must examine the claims and defenses at issue painstakingly and cannot rely on the assurances of counsel that any problems with predominance or superiority can be overcome. *Castano*, 84 F.3d at 744. "The predominance requirement of Rule 23(b)(3), though redolent of the commonality requirement of Rule 23(a), is 'far more demanding' because it 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Gene and Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008) (citations omitted).

A party seeking class certification under Rule 23(b)(3) must also demonstrate "(2) that class resolution is superior to alternative methods for adjudication of the controversy." *Bell Atlantic Corp. v. AT&T Corp.*, 339 F.3d 294, 301 (5th Cir. 2003). Whether common issues predominate and whether the class action is a superior method to resolve the controversy requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case. *Castano*, 84 F.3d at 744. The (b)(3) class action was intended to dispose of all other cases in which a class action would be "convenient and desirable," including those involving large-scale, complex

---

[1] Rule 23(b)(3) provides:
> (b) A class action may be maintained if Rule 23(a) is satisfied and if:
>> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>>> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>>> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>>> (C) the desirability or understandability of concentrating the litigation of the claims in the particular forum; and
>>> (D) the likely difficulties in managing a class action.

litigation for money damages. *Xavier v. Belfour Group USA, Inc.* 254 F.R.D. 281, 290 (E.D. La. Mar. 31, 2008).

**III. Analysis**

Plaintiff moves to have a class certified pursuant to Federal Rule of Civil Procedure 23(b)(3) consisting of:

> All persons and entities that are subscribers of telephone numbers to which within four years of the filing of this Complaint, Defendant sent unsolicited facsimile transmissions with content that discusses, describes, promotes products and/or services offered by Defendant, and does not contain the opt-out notice required by 47 U.S.C. § 227(b)(2)(D) and by 47 C.F.R. § 227(b)(2)(D) and by 47 C.F.R. § 63.1200(a)(4)(iii).

(Rec. Doc. 1, p. 5).

The Court finds that AMP has failed to meet its burden of showing that the requirements of Rule 23 have been met. The Court is unconvinced that AMP meets the typicality requirement of Rule 23(a)(3). As a result, this matter is not suitable for class action certification under Rule 23.

Rule 23(a)(3) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." The requirement depends "less on the relative strengths of the named and unnamed plaintiffs' cases than on the similarity of legal and remedial theories behind their claims." *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016) (quoting *Jenkins v. Raymark Indus. Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)). A typicality inquiry may be used to "screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present." 7A Wright & Miller, *Federal Practice and Procedure* § 1764 (3d ed. 2018).

Before addressing the parties' respective arguments concerning the typicality requirement, it is first necessary to discuss the history of AMP as a business entity. Great American alleges to

limit its fax campaigns to customers who voluntarily disclose their fax numbers to Great American and who gave permission to Great American to utilize fax as a means of communication. (Rec. Doc. 80-1, pp. 10–11). From those entities that voluntarily disclose their fax number to Great American, Great American further reduces potential fax recipients based on the date of orders by Great American's customers. Great American only faxes customers who have placed an order within a certain period of time. According to Great American, those customers who place an order with Great American concerning the automobile industry are eligible to receive faxes for 48 months after the order date. Those customers who place an order with Great American concerning property management are eligible to receive faxes for 60 months. (Rec. Doc. 80-1, pp. 15–16).

Marshall Brothers Lincoln, LLC ("Marshall Brothers Lincoln") has been buying products from Great American since February 14, 1996. (Rec. Doc. 80-4, pp. 1–8). According to the Court's calculations, Marshall Brothers Lincoln made approximately 108 orders with Great American from February 14, 1996 to August 13, 2014. *Id.* As AMP is in the automotive industry, it fell within the 48-month window to receive fax advertisements from Great American in January, February, March, April, May, and June of 2017. The faxes sent by Great American were sent to the office manager at Marshall Brothers Lincoln, account no. 104236 at fax number 504-780-2018.

On February 7, 2017, AMP's counsel, Ryan Monsour, filed the Articles of Organization of AMP Automotive, LLC and received a certificate from the Louisiana Secretary of State acknowledging the formation of AMP, and authorized AMP to transact business in Louisiana. (Rec. Doc. 80-5). The next month, AMP acquired the assets of Marshall Collision Center, LLC. (Rec. Doc. 80-6). Pursuant to the Purchase and Sale Agreement, the assets and going concern of Marshall Collision Center were transferred to and acquired by Elwood A. Pilet, Jr. ("Al Pilet").[2]

---

[2] Great American even alleges to have evidence of Al Pilet placing an order on at least one occasion with Great American. (Rec. Doc. 80, p. 3 n. 2); *see also* (Rec. Doc. 80-2, p. 30).

In addition, "Pilet and AMP acquired certain liabilities, including accounts payable, sales and use taxes, and leasehold rights and interests and obligations under a lease between George J. Marshall and Patrick W. Marshall and Marshall Bros. Lincoln." (Rec. Doc. 80, p. 4) (citing Rec. Doc. 80-6). An Addendum to the Agreement of Sale and Purchase was entered on or about March 17, 2017. (Rec. Doc. 80-8). The Addendum provided a "transition period" from the date of execution of the Agreement of Sale and Purchase through April 30, 2017. *Id.* During this transition period, any cash balance in the Marshall Bros. Lincoln checking account was to remain to cover the transferred liabilities; thereafter, on May 1, 2017, any balance remaining in Marshall Bros. Lincoln's account would be transferred to AMP. Further, Great American contends that "transfer of ownership of various assets of Marshall Brothers Lincoln and Marshall Collision Center was not complete until after the transition period." *Id.* According to Great American, "in mid-March, AMP filed its Application to Register Trade Name, Trademark or Service Mark, seeking to register its trade name, Marshall Bros. Collision Center." (Rec. Doc. 80, p. 5) (citing Rec. Doc. 80-9).

According to Great American, the business did not change. (Rec. Doc. 80, p. 5). According to the deposition of Al Pilet, Marshall Brothers Collision Center was originally owned by Marshall Brothers Lincoln, thereafter it was owned by Marshall Collision Center, and is now owned by AMP. (Rec. Doc. 80-2, pp. 22–23). The business has been operating under the name "Marshall Brothers Collision Center" since 1970, and the sign in front of the business still reads "Marshall Brothers Collision Center. (Rec. Doc. 80-2, pp. 26–27). According to Great American, the business's website, which was copyrighted in 2011 during the time period when the business was owned by Marshall Bros. Lincoln, still identifies employees of Marshall Bros. Lincoln, and makes no mention of AMP. (Rec. Doc. 80-2, p. 16). Great American lastly argues that "from at least 2014 through the transition period, ending on April 30, 2017, payroll and, presumably

utilities, for the business located at 4718 Sanford Street in Metairie was paid out of one or more checking accounts belonging to Marshall Bros. Lincoln." (Rec. Doc. 80, p. 5).

Marshall Brothers Lincoln, Marshall Collision Center, and AMP have each used the same fax number when operating the business—504-780-2018. (Rec. Doc. 80-2, pp. 3–4). Great American notes that according to Al Pilet, he began keeping faxes in January of 2017. Great American also notes that this was one month before AMP was formed and after receipt of only two faxes from Great American. (Rec. Doc. 80-5); *see also* (Rec. Doc. 1-1, pp. 1–2).

Great American argues that "[a]ny argument as to the fact that fax number 504-780-2018 was not voluntarily disclosed to Great American is disingenuous in light of the fact that [AMP] utilizes a shared fax number with Great American's customer Marshall Brothers Lincoln and Marshall Brothers Collision Center." (Rec. Doc. 80, p. 11 n. 6). The Court does not make a finding at this time as to the merits of this argument, but does foresee this issue being unique to the dispute between AMP and Great American, and not an issue that will be typical to the whole class.

AMP argues that its past relationship with Marshall Brothers Lincoln is irrelevant to this case. The Court disagrees. While Marshall Brothers Lincoln may eventually be victorious on its argument that the relationship is irrelevant, the issue will be a point of contention unique to this case, and not typical of the class as a whole.

The Court's principal concern is AMP's legal maneuvering between business identities prior to filing this lawsuit. While the Court recognizes the case law cited by AMP finding that the TCPA does not limit liability based on theories of agency or authority, the unique posture of the relationship between Marshall Bros. Lincoln, Marshall Collision Center, and AMP does not warrant certification of a class action. While AMP may be successful on its individual claims, the

defenses presented by Great American against AMP and the factual nature of AMP's corporate history are unique, and not typical to the class as a whole.

## IV. Conclusion

The facts surrounding this matter do not make it amenable to class wide resolution. At the heart of this matter is the issue of whether Great American's faxes to AMP were solicited or unsolicited. Again, the Court makes no findings regarding the merit of Great American's defense that AMP consented or gave permission to Great American in the past. However, the Court does foresee trial in this matter revolving around the timing of AMP's formation and its relationship to past entities involved with Marshall Bros. Collision Center.

The Court is familiar with the strict-liability nature of the TCPA, and has reviewed the case law cited by AMP. However, that issue is not before the Court today. Rather, the Court foresees theories of agency and authority being unique issues to the instant parties that will not be typical to the proposed class as a whole.

Accordingly;

IT IS ORDERED that **Plaintiff's Motion for Class Certification (Rec. Doc. 70)** is **DENIED.**

August 22, 2018

JUDGE JAY C. ZAINEY
UNITED STATES DISTRICT JUDGE