UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AMP AUTOMOTIVE, LLC<br><br>V.<br><br>B F T, LP d/b/a GREAT AMERICAN BUSINESS PRODUCTS | CIVIL ACTION NO.: 2:17-cv-05667<br><br>SECTION: A<br><br>MAGISTRATE: 5 |

### PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

**MAY IT PLEASE THE COURT:**

Plaintiff, AMP Automotive, LLC ("Plaintiff"), respectfully submits this Memorandum in Support of its Motion for Summary Judgment.

### FACTUAL AND PROCEDURAL HISTORY

Plaintiff filed its Complaint seeking to establish a class action under the Telephone Consumer Protection Act of 1991 ("TCPA"), as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), against defendant, BFT, LP d/b/a Great American Business Products ("Defendant"), on June 8, 2017.[1]  On November 22, 2017, Defendant filed its Answer and Defenses to Complaint.[2] Defendant's Answer, in relevant part, asserts the two meaningful defenses that provide Defendant with safe-harbor in TCPA matters such as this.  These defenses include the "establish business relationship" ("EBR") defense and the "consent" defense.

On April 3, 2018, Plaintiff filed a Motion for Partial Summary Judgment Regarding the EBR defense.  This Court granted Plaintiff's motion on August 23, 2018, thus leaving the issue of consent as the only remaining defense.

---

[1] Rec. Doc. 1.
[2] Rec. Doc. 26.

As this Court is aware, Plaintiff's Complaint challenges Defendant's practice of sending unsolicited facsimile advertisements in violation of the TCPA, as amended by the JFPA. The Complaint alleges Defendant sent Plaintiff, numerous fax advertisements. Specifically, from February 28, 2017 to June 12, 2017, Defendant sent fourteen (14) fax advertisements to Plaintiff's fax number, 504-780-2018.

The faxes sent to Plaintiff by Defendant offer a variety of products sold by Defendant, and asks recipients "*to order, call us at 1-800-231-0329 or visit www.gabpauto.com*." Each fax states at the bottom the following non-compliant opt-out notice:

> *If you'd prefer not to receive future fax offers, check the box below and fax this to 1-800-423-6808.*

Thereunder, in fine print, is a box with the following:

> *We hope you enjoyed receiving this reminder. However, if you'd rather not receive future faxes from Great American please check here. Please Note: it may take up to 5 business days to be removed. Our apologies if you receive additional faxes during this time.*

A copy of these faxes is attached as Exhibit 1. The Complaint further alleges that these faxes are "unsolicited advertisements" in violation of the TCPA.

Defendant has argued that the fax advertisements sent to Plaintiff did not violate the TCPA because the faxes were not unsolicited. Specifically, Defendant asserts that these faxes were not unsolicited due to the fact the Plaintiff, and/or its predecessor in interest, voluntarily provided fax numbers to the Plaintiff, thus requesting receipt of such fax advertisements. This is simply not true and is a misapplication of the "consent" defense. In granting Plaintiff's motion for partial summary judgment concerning the EBR defense, this Honorable Court outlined the definition of an "unsolicited advertisement":

> "The term 'unsolicited advertisement' means any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise. 47 U.S.C. § 227(a)(5)."

[R. Doc. 88 at p. 3]. Based on the foregoing, Plaintiff now brings the instant motion for summary judgment, addressing Defendant's "consent" defense to send fax advertising. The gravamen of Plaintiff's motion is that Defendant failed to obtain express permission or invitation prior to sending the fax advertisements at issue. As a result, this Court should grant summary judgment in Plaintiff's favor given the lack of any remaining defenses concerning Defendant's illegal conduct.

## LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *York v. Advocates for Juvenile and Adult Rights*, 2018 WL 438196 (E.D. La. 2018), quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)(citing Fed. R. Civ. P. 56(c)). A party moving for summary judgment bears the initial burden of demonstrating the basis for summary judgment and identifying those portions of the record, discovery, and any affidavits supporting the conclusion that there is no genuine issue of material fact. *Id*. at 323. If the moving party meets the burden, then the nonmoving party must use evidence cognizable under Rule 56 to demonstrate the existence of a genuine issue of material fact. *Id.* at 324. A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. See *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1996). "[U]nsubstantiated assertions, conclusory allegations, and merely colorable factual bases are insufficient to defeat a motion for summary judgment. See *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); see also *Anderson*, 477 U.S. at 249-50.

## LAW AND ARGUMENT

This Honorable Court has already found that the opt-out contained on Defendant's faxes does not satisfy the requirements set forth by 47 U.S.C. § 227(b)(2)(D), (E) and 47 C.F.R. § 64.1200(a)(4)(iii), (v), and that Defendant is therefore precluded from asserting the EBR defense.

Accordingly, the only defense available to Defendant is that the fax advertisements it sent to the Plaintiff were not unsolicited, meaning that Defendant obtained the "prior express permission or invitation," in writing or otherwise, from Plaintiff of its fax advertisements. The Federal Communications Commission's ("FCC") rules implementing the TCPA and the Junk Fax Prevention Act make this quite clear:

> "[T]he sender must obtain the prior express invitation or permission from the consumer before sending the facsimile advertisement. Prior express invitation or permission may be given by oral or written means, including electronic methods. The Commission expects that written permission will take many forms, including e-mail, facsimile, and internet form. Whether given orally or in writing, prior express invitation or permission must be express, must be given prior to the sending of any facsimile advertisements, and must include the facsimile number to which such advertisements may be sent. It cannot be in the form of a 'negative option.'"

Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967-01, 25972, 2006 WL 1151584.

As stated above, the FCC requires the sender to obtain the "prior express invitation or permission" to send fax advertisements, from the consumer, before sending a fax. In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd. 3787, 3808 (Apr. 6, 2006) ("2006 Order); 47 U.S.C. § 227(a)(5); 47 C.F.R. § 64.1200(a). It is the defendant's burden and responsibility to demonstrate the existence of prior express permission. *Id*. at 3794 (noting that the entity sending the fax is in the "best position" to have records demonstrating consent); *Id*. at 3807 (senders "must be prepared to provide **clear and convincing evidence** of the existence of such permission."). Accordingly, it is the defendant's burden to prove that it obtained "express permission" to fax the ads at issue prior to sending the advertisements. [3] *Id*.; Rules and Regulations Implementing the Telephone Consumer Protection

---

[3] In the 2006 Order, the FCC stated that "[s]enders that claim their facsimile advertisements are delivered based on the recipient's prior express permission must be prepared to provide clear and convincing evidence of such permission." In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 21 FCC Rcd. 3787, 3807 ¶ 36 (Apr. 6, 2006)

Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967-01, 25972, 2006 WL 1151584. See *Spine & Sports Chiropractic, Inc. v. ZirMed, Inc.*, No. 3:13–CV–00489–TBR, 2014 WL 2946421, at *19 (W. D. Ky. June 30, 2014) quoting Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991; Junk Fax Prevention Act of 2005, 71 FR 25967, at 25972:

> "Commenters that discussed this issue agree that a sender should have the obligation to demonstrate that it complied with the rules, including that it had the recipient's prior express invitation or permission. Senders who choose to obtain permission orally are expected to take reasonable steps to ensure that such permission can be verified. In the event a complaint is filed, the burden of proof rests on the sender to demonstrate that permission was given. The Commission strongly suggests that senders take steps to promptly document that they received such permission. (An example of such documentation could be the recording of the oral authorization. Other methods might include established business practices or contact forms used by the sender's personnel.) Express permission need only be secured once from the consumer in order to send facsimile advertisements to that recipient until the consumer revokes such permission by sending an opt-out request to the sender."

The TCPA does not define the term "prior express invitation or permission." See 47 U.S.C. § 227(a)(5). The FCC has clarified the term in regulations, stating that "[e]xpress permission to receive a faxed ad requires that the consumer understand that by providing a fax number, he or she is agreeing to receive faxed advertisements." In the Matter of Rules and Regs. Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14129 ¶ 193 (July 3, 2003) ("2003 Order"). **It is also important to note that express permission and consent are not the same thing; they are in fact very different**. Throughout the law, consent may be express or implied. See, e.g., *Reynolds v. Tangherlini*, 737 F.3d 1093, 1106 (7th Cir. 2013); *Richer v. Morehead*, 798 F.3d 487, 490 (7th Cir. 2015); *United States v. Risner*, 593 F.3d 692, 694 (7th Cir. 2010); *Hunter v. Amin*, 583 F.3d 486, 492 (7th Cir. 2009). But in this instance, by definition, "permission" must be

---

("2006 Order"). However, a recent case out of the Northern District of Illinois provides that prior express permission of invitation must be established by a preponderance of the evidence. *Physicians Healthsource, Inc. v. A-S Medication Solutions LLC*, --- F.Supp.3d ----, 2018 WL 3993409, *3 (N. D. Ill 8/21/18). Regardless of the applicable burden, Defendant cannot establish that Plaintiff provided prior express permission or invitation to receive fax advertisements.

"expressed." 47 U.S.C. § 227(a)(5). There is no avenue for inferring or implying permission or invitation based on circumstances or conduct. *Physicians Healthsource, Inc. v. Allscripts Health Solutions, Inc.*, CA No. 12-C-3233, 2017 WL 2391751 (N.D. Ill. 2017). The "context" within which a customer gives its permission is important in determining the scope of prior express invitation or permission. "[T]he FCC considers the scope of a consumer's consent to receive calls to be dependent on the context in which it is given." *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 488 (N.D. Ill. 2015) (citing *Kolinek v. Walgreen Co.*, No. 13 C 4806, 2014 WL 3056813, at *3 (N.D. Ill. July 7, 2014)). "Consent for one purpose does not equate to consent for all purposes." *Kolinek*, 2014 WL 3056813, at *4; see also *Baisden v. Credit Adjustments, Inc.*, 813 F.3d 338, 343 (6th Cir. 2016) ("[T]he context of the consent provided is critical"); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 30 F.C.C. Rcd. 7961, 7990 (2015) ("[T]he scope of consent must be determined upon the facts of each situation.").

The rules implementing the TCPA go on to express concern that, since permission may be obtained orally, senders might falsely submit that they had received permission to send a fax. As such, the Rules warn senders that if they choose to obtain permission orally, they must take reasonable steps to ensure that permission can be verified, such as by promptly documenting oral permission. *Id*. A defendant may not rely on its own failure to obtain and retain records of who consented to receiving fax advertisements. *Dr. Robert L. Meinders D.C., Ltd. v. Emery Wilson Corporation*, CA No. 14-CV-596-SMY-SCW, 2016 WL 3402621 (S.D. Ill. 6/21/2016), quoting *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 659 (7th Cir. 2015).

In the instant matter the evidence establishes that Defendant never obtained prior express permission or invitation to send facsimile advertisements to Plaintiff. On February 8, 2018, Plaintiff took the Rule 30(b)(6) deposition of Defendant through its designated representative

Barbra De La Riva. Ms. De La Riva testified as follows concerning Defendant's contact with Plaintiff:

> Q: All right. Now, would it be fair to say that you have never obtained prior express permission from AMP to send them fax advertisements?
>
> A: It would be fair to say since I have never sent AMP fax advertisements.
>
> Q: All right. You say that you've never sent AMP a fax advertisement, but you have sent fax advertisements, have you not, to a number which we maintain is now owned by AMP?
>
> A: Yeah.[4]

The above testimony of Defendant clearly indicates that at no point in time did Defendant obtain the necessary consent from Plaintiff to allow them to send facsimile advertisements. Knowing this to be certain, Defendant will undoubtedly argue that although it did not obtain consent from Plaintiff, as required under the TCPA, it did obtain consent from the previous owner of Plaintiff's fax number, Marshall Bros. Lincoln. However, as described in more detail below, this argument also lacks any merit.

During Defendant's corporate deposition, Ms. De La Riva testified that the only way Defendant obtained the fax numbers was in setting up accounts for customers when they called in orders.[5] Also, Ms. De La Riva identified Ms. Dawn Coffman as the individual in charge of training the call center employees whose job was to obtain these fax numbers.[6] It was later learned that Ms. Coffman possessed the necessary company knowledge as to the policies and procedures of collecting fax numbers, and whether or not express permission or invitation was given to Defendant, allowing it to send facsimile advertisements to those individuals who provided fax numbers.

---

[4] Exhibit 2, Rule 30(b)(6) deposition Barbra De La Riva – p. 136:4-16.
[5] Exhibit 2, Rule 30(b)(6) deposition Barbra De La Riva – pp. 49:20-50:22.
[6] Exhibit 2, Rule 30(b)(6) deposition Barbra De La Riva – p. 54:2-6.

On June 14, 2018, Plaintiff took the deposition of Dawn Coffman. Ms. Coffman unequivocally testified that call center employees did not inform the customers why they were requested to provide their fax number. Ms. Coffman went even further, and stated that because call center employees did not ask for permission to send fax advertisements, that there are no contemporaneous records showing that BFT obtained permission to send fax advertisements. Ms. Coffman states as follows:

> Q: Ms. Coffman, you told me the training hasn't changed over the years. Is it fair to say that Great American never instructed its call center employees to expressly ask for permission to send their customers fax advertising?
>
> A: We – I don't – to my recollection, we do not ever say why or don't do it or, you know, anything about it.
>
> Q: Sure. You just collect the fax numbers –
>
> A: Correct.
>
> Q: – as part of the protocol, and you wouldn't tell the customer why you're getting the fax number?
>
> A: Correct.
>
> …
>
> Q: You say you don't tell customers why you're obtaining their fax numbers. That has been the case going back in time and all the way up through the time this lawsuit was filed?
>
> A: Correct.
>
> Q: And you would be the person who would know what – what's told to customers because you monitor those calls?
>
> A: Correct.
>
> …
>
> Q: This may sound like a silly question, but since – I understand that y'all didn't ask for the express permission to send fax advertisements; y'all just got the fax number and wouldn't tell them why you're getting the fax number. So there wouldn't be any contemporaneous records about obtaining express permission to send fax advertisements, would there?

Page 8 of 10

A:      No.[7]

This testimony not only shows that Defendant failed to obtain the necessary prior express invitation or permission as required to send facsimile advertisements, but also shows that Defendant's policy and practice of obtaining these fax numbers was universally applied to all its customers, including Marshall Bros. Lincoln, the previous owner of the fax number now owned by Plaintiff. As stated above, it is Defendant's burden to prove the existence of prior express permission or invitation by a preponderance of the evidence and Defendant may not rely on its own failure to obtain and retain records of who consented to receiving fax advertisements. To date, Defendant has provided no such evidence, and based upon the testimony of Defendant's representatives, no such evidence exists.

The above-referenced evidence and law plainly demonstrates that Defendant never obtained the prior express permission or invitation to send facsimile advertisements to Plaintiff. Defendant bears the burden of proving the applicability of the defenses it chooses to assert. *Miraglia v. Supercuts, Inc.*, 2015 WL 7451208, *3 (E.D. La 2015). Here, it is clear that Defendant never obtained prior express permission or invitation to send fax advertisements, foreclosing the availability of the "consent" defense. Thus, Plaintiff is entitled to summary judgment since both the EBR defense and the "consent" defense are unavailable to Defendant in this case as a matter of law.

With regards to Plaintiff's damages, a TCPA Plaintiff may bring "an action to recover for actual monetary loss from [a violation of the TCPA], or to receive $500 in damages for each such violation, whichever is greater." 447 U.S.C. § 227(b)(3)(B). A defendant is therefore liable for no

---

[7] Exhibit 3, Deposition of Dawn Coffman, pp. 35-36, Lines 6-25, 1-24

less than $500 in damages for each of its violations of the TCPA.  *See Kenro, Inc. v. Fax Daily, Inc.*, 962 F. Supp. 1162, 1167 (S.D. Ind. 1997).

Here, Defendant committed at least fourteen (14) violations of the TCPA by sending Plaintiff fourteen (14) unsolicited fax advertisements attached hereto as Exhibit 1.[8]  At $500 per violation, Plaintiff is entitled to a total award of $7,000 in statutory damages under the TCPA.

## CONCLUSION

For the foregoing reasons, Plaintiff prays that this Honorable Court grant its Motion for Summary Judgment, and award Plaintiff $7,000.

Respectfully Submitted:

*/s/ Ryan P. Monsour*

———————————————
GEORGE B. RECILE (#11414)
PRESTON L. HAYES (#29898)
RYAN P. MONSOUR (#33286)
MATTHEW A. SHERMAN (#32687)
PATRICK R. FOLLETTE (#34547)
*Chehardy, Sherman, Williams, Murray, Recile, Stakelum & Hayes, L.L.P.*
One Galleria Boulevard, Suite 1100
Metairie, Louisiana 70001
Telephone: (504) 833-5600
Facsimile: (504) 613-4528
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2019, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*/s/ Ryan P. Monsour*

———————————————

---

[8] Exhibit 4, Declaration from Elwood Pilet, Jr. stating AMP received 14 unsolicited fax advertisements from Defendant, which are attached as Exhibit 1.